NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3081
_____

UNITED STATES OF AMERICA

v.

MALCOLM SEGAL,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-15-cr-00287-001
District Judge: The Honorable Gerald A. McHugh

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 23, 2017

Before: SMITH, *Chief Judge,* JORDAN, and ROTH, *Circuit Judges*

(Opinion Filed: April 19, 2017)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge*.

In February of 2016, Malcolm Segal pled guilty to eleven counts of mail fraud in violation of 18 U.S.C. § 1341 and three counts of wire fraud in violation of 18 U.S.C. § 1343. The District Court sentenced Segal to, *inter alia,* 126 months' imprisonment. Segal appeals his sentence. For the reasons set forth below, we will affirm.

Segal was a financial advisor for many years, working as a broker of certificates of deposit (CDs). In addition to his employment with Cumberland Securities (Cumberland) and Aegis Capital Corporation (Aegis), Segal was president of his own CD brokerage, National CD Sales (National). Through National, Segal purchased CDs, distributed interest checks, and handled CDs at maturity by redeeming or rolling them over. In 2008 or 2009, after Cumberland stopped handling CDs, National began servicing Cumberland's clients and managing their CD investments. As National's president, Segal had signatory authority. When his clients chose to roll-over their investment, Segal abused his authority by redeeming the CD for himself. He then had documents mailed to the clients that purported to show that Segal had reinvested the client's money into a new CD. The documents set forth false CD numbers, maturity dates, and rates of interest for the fictitious CDs.

To further hide his misappropriation of the funds, Segal sent some of the investors monthly handwritten interest checks from National to perpetuate the investors' beliefs that they were still earning interest on their fictitious CDs.

Segal also abused his authority as an advisor with Aegis. In 2011, Segal convinced six investors to purchase CDs with a generous rate of return. Instead of purchasing the CDs for the investors, Segal pocketed most of the cash, and used some of it to repay prior investors. Segal again provided documentation by letter to those six investors of the non-existent investment purportedly held by Aegis, using letterhead he created bearing Aegis's symbol and the FDIC-insured seal. Segal continued his practice of sending monthly interest checks to extend the life of his fraudulent scheme. In addition, Segal further abused his authority and wired to himself the money from the accounts of three other Aegis investors using the information he had gained as their financial advisor.

Segal pled guilty to the mail and wire fraud charges arising out of the above facts. At sentencing, the District Court computed a total offense level of 28 by applying various enhancements, including a two point enhancement for utilizing "sophisticated means" to achieve the fraud. U.S.S.G. § 2B1.1(b)(10). The total offense level of 28 and Segal's criminal history category of I resulted in a sentencing guideline range of 78 to 97 months. The Court agreed with the

government that Segal's conduct warranted an upward variance, and imposed a sentence of 126 months of imprisonment.

This timely appeal followed. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Segal raises two arguments: (1) the District Court erred in assessing the U.S.S.G. § 2B1.1(b)(10) sophisticated means adjustment; and (2) the District Court procedurally erred by failing to meaningfully address the sentencing factors set forth in 18 U.S.C. § 3553(a). Neither argument has merit.

Segal argues that his conduct was simply a "garden variety Ponzi scheme," which did not warrant application of the sophisticated means enhancement. Appellant's Br. 19. Because Segal objected to the District Court's application of the sophisticated means enhancement, we review this factual finding for clear error. *See United States v. Fountain*, 792 F.3d 310, 320 (3d Cir. 2015) (reviewing for clear error the District Court's factual finding that defendant employed "sophisticated means" under U.S.S.G. § 2B1.1). The "sophisticated means" enhancement applies when there is "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B). In *Fountain*, we instructed that "a sophisticated means enhancement is appropriate where a defendant's conduct 'shows a greater

level of planning or concealment than a typical fraud of its kind.'" 792 F.3d at 319 (internal citations omitted).

For more than a four-year period, Segal used various falsified documents. Some of them bore the Aegis letterhead and the FDIC-insured seal in order to maintain the ruse with multiple investors that their investments, which bore false certificate numbers, maturity dates and interest rates, were actually valid. Given these practices, we cannot conclude that the District Court clearly erred in applying the sophisticated means enhancement. We appreciate Segal's argument that a factfinder could have concluded that the fraudulent scheme was not that complex or elaborate. The problem for Segal is that the evidence here could support either assessing the enhancement, as the District Court did, or concluding that the means were not that sophisticated. If either view of the evidence is plausible, the Court's assessment cannot constitute clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Segal also contends that the District Court procedurally erred by failing to meaningfully consider the 18 U.S.C. § 3553(a) sentencing factors and imposing a 29 month upward variance from the guideline range. We review for an abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).

The sentencing transcript belies Segal's contention. The District Court thoughtfully considered the § 3553(a) factors, was mindful of the advisory guideline range, and adequately explained that an upward variance was appropriate given the fact that Segal's motivation was "self-indulgence and greed and the betrayal of those who were close to him." Supp. App. 44. The District Court called attention to the vulnerability of some of Segal's victims because of their age or their handicap, including one victim who financially supported a son who had Down Syndrome. *Id.* Specific deterrence, the Court explained, was not at issue given Segal's age and the loss of his license. Instead, the District Court focused on general deterrence, referring to "the need to impose a sentence that says to all financial advisors . . . conduct like this cannot be tolerated." Supp. App. 45.

In sum, neither of Segal's contentions of error are persuasive. We will affirm the judgment of the District Court.